IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK MURPHY,

             Plaintiff,

vs.                                        Case No. 14-1108-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

             Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On December 6, 2012, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 11-25). Plaintiff alleges that he had been disabled since June 25, 2010 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2010 (R. at

13).  At step one, the ALJ found that plaintiff did not engage

in substantial gainful activity from the alleged onset date

through the date last insured (R. at 13).  At step two, the ALJ

found that plaintiff had severe physical and mental impairments

(R. at 13).  At step three, the ALJ determined that plaintiff's

impairments do not meet or equal a listed impairment (R. at 14).

After determining plaintiff's RFC (R. at 16), the ALJ determined

at step four that plaintiff was unable to perform past relevant

work (R. at 23).  At step five, the ALJ found that plaintiff can

perform other jobs that exist in significant numbers in the

national economy (R. at 24).  Therefore, the ALJ concluded that

plaintiff was not disabled (R. at 24-25).

## III.  Did the ALJ err by failing to incorporate limitations in plaintiff's mental RFC?

In his RFC findings, the ALJ limited plaintiff to sedentary

work and "unskilled" work (R. at 16).  Dr. Jessop opined on

April 27, 2011 that that plaintiff was moderately limited in

interacting appropriately with the general public and stated

that it was likely that plaintiff would feel best in a setting

not requiring much interaction with the public (R. at 109-110).

On December 28, 2010, Dr. Biscardi opined that plaintiff

retained the capacity to perform less than 4 step tasks, and to

interact briefly/superficially with coworkers/supervisors (R. at

543).  The ALJ accorded "great weight" to their opinions (R. at

20).  However, the specific limitations noted by Dr. Jessop and
Dr. Biscardi regarding interacting with others were not included
in the ALJ's RFC findings.  At step five, the ALJ found that
plaintiff's additional nonexertional limitation of unskilled
work had no effect on the occupational base of unskilled
sedentary work; therefore, a finding of "not disabled" was made
under the framework of the Medical-Vocational Guidelines or the
"grids" (R. at 24).  The question before the court is whether
the ALJ erred by not including in his RFC findings the more
specific limitations of Dr. Jessop and Dr. Biscardi to which the
ALJ accorded great weight.

    As a general rule, an ALJ should include in his RFC
findings physical or mental limitations which are included in a
report from a medical source accorded great or significant
weight by the ALJ, unless the ALJ provides a legitimate
explanation for not including that limitation in his/her RFC
findings.  The ALJ offered no explanation for not including in
his RFC findings the opinions of medical sources that plaintiff
was moderately limited in his ability to interact appropriately
with the general public, and was limited to brief or superficial
interaction with coworkers and supervisors.  As noted above, the
ALJ gave "great" weight to their opinions.

    In the case of Mitchell v. Astrue, 498 Fed. Appx. 757, 759
(10th Cir. Oct. 1, 2012), the ALJ limited plaintiff to light

work.  The ALJ further found that plaintiff can perform simple
tasks with routine supervision, can relate to supervisors and
peers on a superficial work basis, and cannot relate to the
general public.  The ALJ cited to SSR 85-15, which defines
unskilled work as the ability on a sustained basis to
understand, carry out, and remember simple instructions, to
respond appropriately to supervision, co-workers and usual work
situations, and to deal with changes in a routine work setting.
498 Fed. Appx. at 759-760; SSR 85-15, 1985 WL 56867 at *4.  The
ALJ, relying on the grids, found that the claimant could perform
substantially all of the work available in the unskilled light
work category even with his nonexertional limits.  The court
affirmed the decision of the ALJ.  498 Fed. Appx. at 760.

In the case of Redmond v. Colvin, 2015 WL 506571 at *3 (D.
Utah Feb. 6, 2015), plaintiff was limited to medium work,
simple, routine tasks in an environment involving no contact
with the general public, and no more than occasional and
superficial contact with supervisors and coworkers.  The ALJ
relied on the grids as a framework to find that plaintiff was
not disabled.  The ALJ, relying on SSR 85-15, found that
plaintiff's additional nonexertional limitations had little or
no effect on the occupational base of unskilled medium work.
2015 WL 506371 at *4.  The court held that limitations to
simple, routine tasks, no contact with the general public, and

no more than occasional and superficial contact with supervisors
and coworkers would not have a significant impact upon the
occupational base so as to preclude reliance upon the grids.
The court noted that SSR 85-15 states that unskilled jobs
ordinarily involve dealing primarily with objects, rather than
with data or people.  2015 WL 506571 at *4.

        In the case before the court, the ALJ gave great weight to
opinions that plaintiff was moderately limited in his ability to
interact with the general public, and could only interact
briefly/superficially with coworkers/supervisors.  The ALJ cited
to SSR 96-9p, and its definition of unskilled work, to support
his finding that the framework of the grids indicates that a
limitation to unskilled work has no effect on the occupational
base of unskilled sedentary work.  Therefore, a finding of "not
disabled" is appropriate under the framework of the applicable
Rule (R. at 24).  The definition of unskilled work in SSR 96-9p
is identical to the definition of unskilled work found in SSR
85-15.  See 1996 WL 374185 at *9; 1985 WL 56857 at *4.

        In both Mitchell and Redmond, the ALJ had included
limitations of no contact with the general public and only an
occasional or superficial contact with supervisors or coworkers.
In both cases, the court concluded that, even with these
limitations, the ALJ could rely on the grids as a framework to
find that these additional nonexertional limitations would not

have a significant impact on the exertional occupational base so as to preclude reliance on the grids.  Therefore, even had the ALJ in the case before the court included the limitations that plaintiff was moderately limited in interacting with the general public, and could only interact briefly/superficially with coworkers/supervisors, it is clear from Mitchell and Redmond that the addition of such limitations in the ALJ's RFC findings would not have precluded the ALJ's use of the grids as a framework to find that those limitations would have no effect on the occupational base of unskilled sedentary work.  Therefore, the failure to include the limitations in question is harmless error on the facts of this case.  The court finds that substantial evidence support the ALJ's mental RFC assessment.

**IV.  Did the ALJ err in his consideration of the medical opinion evidence regarding plaintiff's physical RFC limitations?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p,

9

1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20
C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530
n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson
v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

    When the ALJ fails to provide a narrative discussion
describing how the evidence supports each conclusion, citing to
specific medical facts and nonmedical evidence, the court will
conclude that his RFC conclusions are not supported by
substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.
781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must
be sufficiently articulated so that it is capable of meaningful
review; the ALJ is charged with carefully considering all of the
relevant evidence and linking his findings to specific evidence.
Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,
2003).  It is insufficient for the ALJ to only generally discuss
the evidence, but fail to relate that evidence to his
conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49
F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to
comply with SSR 96-8p because he has not linked his RFC
determination with specific evidence in the record, the court
cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.  Such bare conclusions are beyond
meaningful judicial review.  Brown v. Commissioner of the Social

Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the

opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

In his brief, plaintiff argued that the ALJ's RFC regarding his physical functioning is lacking support.  Plaintiff noted that the ALJ gave little weight to any of the medical opinions, and erred by giving no weight to the treating physician opinions of Dr. Seymour (Doc. 11 at 14).  Plaintiff further noted that two other medical opinions were consistent with Dr. Seymour's finding that plaintiff could not perform sedentary work (Doc. 11 at 17).

On October 19, 2010, Dr. Seymour opined that plaintiff could stand/walk for less than 1 hour in an 8 hour workday, and could sit for less than 1 hour in an 8 hour workday (R. at 518-519).  He expressed a similar opinion on December 15, 2011 (R. at 639-640).  He also wrote a letter dated May 31, 2011 discussing plaintiff's impairments, and indicating that plaintiff was disabled (R. at 602).  Dr. Seymour wrote another letter dated February 1, 2011, which was submitted for the 1st time to the Appeals Council (R. at 733).  The ALJ gave no weight to Dr. Seymour's opinions, stating that they are "grossly

inconsistent" from his own treatment notes, in addition to being inconsistent with the evidence of record as a whole (R. at 22).

The ALJ asserted that the opinions of Dr. Seymour are inconsistent with the evidence of record as a whole.  The other medical opinion evidence includes a physical RFC assessment from a non-examining physician, Dr. Nimmagadda, who opined on December 17, 2010 that plaintiff could perform light work, including an ability to stand and/or walk for 6 hours in an 8 hour day (R. at 522-528).[1]  The ALJ made the conclusory statement that his opinions appear to be generally understated when compared to the evidence of record (R. at 21), but the ALJ fails to cite to any evidence supporting a finding that plaintiff can perform sedentary work consistent with the ALJ's RFC findings.

The record also contains a physical RFC finding from another non-examining physician, Dr. Siemsen, dated April 20, 2011 (R. at 106-108).  Dr. Siemsen opines that plaintiff can stand/walk for 2 hours, and sit for 2 hours, which would preclude full-time work.  The ALJ states that the opinions of Dr. Siemsen are overstated compared to the evidence of record, but again does not cite to any evidence supporting a finding that plaintiff can perform sedentary work consistent with the ALJ's RFC findings.

---

[1] The ALJ's RFC findings limited plaintiff to sedentary work, and further indicated that plaintiff could only stand or walk for 2 hours in an 8 hour workday (R. at 16).

Finally, the record contains a physical RFC assessment from a treating source, Mark Wisner, a physician's assistant, who opined on January 17, 2012 that plaintiff can stand/walk for less than 1 hour in an 8 hour workday, and sit for 1 hour in an 8 hour workday (R. at 649-650). He also opined, consistent with Dr. Seymour, that plaintiff would need to lie down periodically during a workday (R. at 650, 519). The ALJ noted that his opinions were made a year after the date last insured, and noted inconsistencies between plaintiff's testimony and some of the limitations set forth by Mr. Wisner (R. at 22-23).

The problem in this case is that the ALJ rejected or gave little weight to all of the medical opinions regarding plaintiff's physical RFC. The ALJ does not cite to any medical opinion in support of his physical RFC findings. However, an exact correspondence between a medical opinion and the RFC is not required. In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance. Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir.

2013) (in Wells, the ALJ rejected 3 medical opinions, finding
that they were inconsistent with the other evidence in the file;
the court directed the ALJ, on remand, to carefully reconsider
whether to adopt the restrictions on plaintiff's RFC detailed in
the medical opinions, or determine whether further medical
evidence is needed on this issue).

The court will briefly comment on the other reason for
discounting the opinions of Dr. Seymour.  The ALJ failed to
state how the opinions of Dr. Seymour are grossly inconsistent
from Dr. Seymour's treatment notes.  They are not inconsistent
with the opinions of Mr. Wisner, and the opinions of Dr. Siemsen
also indicate that plaintiff is unable to sit, stand or walk for
an 8 hour workday.

The ALJ asserted that, in rejecting all of the medical
opinion evidence regarding plaintiff's physical limitations,
such evidence either overstated or understated the evidence of
record.  However, the ALJ failed to point to any evidence
establishing that plaintiff could perform sedentary work.  Such
a finding must be supported by substantial evidence.  Thompson
v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993).  In the
absence of any evidence supporting a finding that plaintiff can
perform sedentary work, and in light of the fact that the ALJ's
physical RFC assessment conflicts with all of the medical
opinion evidence, the court finds that substantial evidence does

16

not support the ALJ's physical RFC findings.  On remand, the ALJ shall reexamine the relative weight to accord the medical opinion evidence, and determine whether further medical evidence is needed on the issue of plaintiff's physical RFC.

**V.  Did the ALJ err in his credibility analysis?**

Plaintiff argues that the ALJ erred in his credibility findings regarding plaintiff's allegations.  The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand after the ALJ, on remand, reviews the medical opinion evidence, and determines whether further medical evidence is needed.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 23rd day of June 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

17